IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ADC RIG SERVICES, INC., and ROBOTIC SATELLITE TECHNOLOGY TEXAS, LLC., | § § § § | |
| Plaintiffs, | § § | |
| vs. | § § | Civil Action No. H-08-1640 |
| JPMORGAN CHASE BANK, N.A., | § § | |
| Defendant and Third-Party Plaintiff, | § § § | |
| vs. | § § | |
| JIM HERRING and BRANDI VAN HORN, | § § | |
| Third-Party Defendants. | § | |

## MEMORANDUM OPINION

Pending before the court[1] is Defendant JPMorgan's Motion for Summary Judgment (Docket Entry No. 21).  The court has considered the motion, all relevant filings, and the applicable law.  For the reasons set forth below, the court **GRANTS IN PART** and **DENIES IN PART** Defendant JPMorgan's Motion for Summary Judgment.

### I.  Case Background

This case arises out of Robotic Satellite Technology Texas, LLC.'s, ("Robotic") and ADC Rig Services, Inc.'s, ("ADC") banking relationship with JPMorgan Chase Bank, N.A., ("JPMorgan").  ADC and Robotic allege that JPMorgan honored several checks bearing forged

---

[1]      The parties consented to proceed before the undersigned magistrate judge for all proceedings, including trial and final judgment, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. Docket Entry No. 10.

signatures of authorized signatories on its bank accounts.

On October 19, 2005, Ole Peter Blom ("Blom"), as a manager of Robotic, opened an account for Robotic ("Robotic Account") at JPMorgan.[2]  Subsequently, Blom, as President of ADC, opened a second bank account at JPMorgan in the name of ADC ("ADC Account").[3]  As part of opening an account, Blom signed signature cards for both accounts and agreed to the account rules and regulations ("Account Agreement").[4] The Account Agreement requires the account holder to:

> reconcile your statement promptly upon receipt.  If [JPMorgan] honor[s] a check or other debit request drawn on your Account that is altered in any way or was not drawn or otherwise authorized by you ("unauthorized item") or if your Account statement contains any errors, you agree to notify us in writing of such unauthorized item or error within 30 days of the date on which the unauthorized item, or the Account statement that contained a description of the unauthorized item or error, was mailed, transmitted or otherwise made available to you.[5]

ADC and Robotic outsourced their accounting and financial

---

[2]      JPMorgan's Motion for Summary Judgment, Docket Entry No. 21,  Ex. A-2, Robotic Account Signature Card, p. 1 (unnumbered).

[3]      JPMorgan's Motion for Summary Judgment, Docket Entry No. 21,  Ex. A-1, ADC Account Signature Card, p. 1 (unnumbered).

[4]      JPMorgan's Motion for Summary Judgment, Docket Entry No. 21, Ex. A-1, ADC Account Signature Card; Ex. A-2, Robotic Account Signature Card; Ex. A-3, Account Rules and Regulations.

[5]      JPMorgan's Motion for Summary Judgment, Docket Entry No. 21, Ex. A-3, Account Rules and Regulations, p. 17.

management to Jim Herring ("Herring").[6]  In that capacity, Herring controlled ADC's and Robotic's check stock, bank statements, had check writing authority, and was responsible for reconciling monthly bank statements.[7]  Subsequently, Herring delegated several responsibilities, including writing checks on both accounts and reconciling the monthly banks statements to Brandi Van Horn ("Van Horn").[8]  During the course of ADC's and Robotic's banking relationship with JPMorgan, monthly account statements were mailed to ADC and Robotic within six business days of the date on the statement.[9]  In accordance with JPMorgan's business practices, the account statements were also made available online and at the bank, the monthly account statements contained the paid checks drawn during the proceeding month, and the images of the paid checks were available electronically.[10]

In December of 2006, ADC and Robotic hired Kimberly Macias ("Macias") and gave her access to their accounting records and bank

---

[6]     JPMorgan's Motion for Summary Judgment, Docket Entry No. 21, p. 4; Plaintiff's Response to JPMorgan's Motion for Summary Judgment, Docket Entry No. 26, p. 6.

[7]     JPMorgan's Motion for Summary Judgment, Docket Entry No. 21, p. 4; Plaintiff's Response to JPMorgan's Motion for Summary Judgment, Docket Entry No. 26, p. 6, Ex. B, Macias's Affidavit p. 2, ¶¶ 2-4.

[8]     Plaintiff's Response to JPMorgan's Motion for Summary Judgment, Docket Entry No. 26, Ex. A, Herring's Deposition, pp. 22, 28-30; Ex. B, Macias's Affidavit p. 2, ¶¶ 2-4.

[9]     JPMorgan's Reply to Plaintiff's Response to JPMorgan's Motion for Summary Judgment, Docket Entry No. 31, Ex. A, Silverman's Affidavit, p. 2, ¶¶ 2-5.

[10]     <u>Id.</u>

statements.[11]   Macias   noticed   several   irregularities   in   the companies bank accounts, including possible check forgeries.[12]   On December 28, 2006, Macias contacted Trent Pokorney ("Pokorney"), a banker at JPMorgan's Weslayan branch, regarding the forgeries, and on that same day, Macias confirmed that checks on the accounts had been forged.[13]   Pokorney informed Macias that she would need to complete JPMorgan's required forgery affidavits.[14]   Apparently Macias never received the forgery affidavits, because she again contacted Pokorney on January 4, 2007, to confirm the forgeries and request forgery affidavits.[15] At this time, Pokorney indicated that he would send Macias the affidavits later that day.[16]  When Pokorney failed to send Macias the required affidavits, Macias attempted to contact Pokorney several times over the next few weeks to obtain the affidavits.[17]  When she was unable to obtain the affidavits from Pokorney, Macias went to another JPMorgan branch where she obtained

---

[11]    Plaintiff's Response to JPMorgan's Motion for Summary Judgment, Docket Entry No. 26, Ex. B, Macias's Affidavit p. 2, ¶¶ 7-8.

[12]    Id. at ¶ 8.

[13]    Id.

[14]    Id.

[15]    Id. at p. 2, ¶ 9.

[16]    Id. at pp. 2-3, ¶ 9.

[17]    Id. at p. 3, ¶ 10.

them.[18]   Macias submitted the ADC Account forgery affidavits on January 19, 2007, and the Robotic Account forgery affidavits on February 8, 2007, to JPMorgan.[19]

## II. Summary Judgment Standard

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Brown v. City of Houston, Tex., 337 F.3d 539, 540-41 (5th Cir. 2003).  A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ameristar Jet Charter, Inc. v. Signal Composites, Inc., 271 F.3d 624, 626 (5th Cir. 2001).  To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party.  Anderson, 477 U.S. at 250; TIG Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002).

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues.  Celotex

---

[18]   Id. at ¶ 11.

[19]   Id. at ¶ 12.

Corp., 477 U.S. at 323; Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir. 1992).  If the moving party can show an absence of record evidence in support of one or more elements of the case for which the nonmoving party bears the burden, the movant will be entitled to summary judgment.  Celotex Corp., 477 U.S. at 322.  In response to a showing of lack of evidence, the party opposing summary judgment must go beyond the pleadings and proffer evidence that establishes each of the challenged elements of the case, demonstrating that genuine issues of material fact do exist that must be resolved at trial.  Id. at 324.  Furthermore, it is not incumbent on the court to search the record for triable issues. Ragas v. Tenn. Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998). The duty to identify evidence and its connection to the issues raised falls squarely on the party opposing summary judgment, and unsubstantiated assertions are not competent summary judgment evidence.  Id.

When considering the evidence, "[d]oubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party." Evans v. City of Houston, 246 F.3d 344, 348 (5th Cir. 2001); see also Boston Old Colony Ins. Co. v. Tiner Assocs. Inc., 288 F.3d 222, 227 (5th Cir. 2002).  The court should not "weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence." Honore v. Douglas, 833 F.2d 565, 567 (5th Cir. 1987).

### III. Analysis

In order to resolve the pending motion for summary judgment, the court must determine: (1) whether JPMorgan provided sufficient account information, under Section 4.406, to ADC and Robotic; (2) whether ADC, Robotic, and JPMorgan modified the standard terms of Section 4.406; (3) when ADC and Robotic first reported the unauthorized checks to JPMorgan; and (4) whether ADC's and Robotic's recovery on the unauthorized items is time-barred.[20]

**A.   Account Information**

Article 4 of the Texas Business and Commerce Code ("Article 4") governs the relationship between banks and their customers. See Generally, Tex. Bus. & Com. Code Ann. §§ 4.401-504; Am. Airlines Employees Fed. Credit Union v. Martin, 29 S.W.3d 86, 91 (Tex. 2000).   Article 4 places an affirmative duty on banks to only charge a customer's account if an item is properly payable. Tex. Bus. & Com. Code Ann. § 4.401(a).   In order to be properly payable an item must be "authorized by the customer and . . . in accordance with any agreement between the customer and the bank."

---

[20]   ADC and Robotic also argue that they met the level of care required by Article 4 and the Account Agreement because they hired a certified public accountant that used QuickBooks and the circumstances in this case mirror the circumstances contemplated by the comments to Section 4.406.  This court is not persuaded.  As discussed below, the parties properly modified the standard terms of Section 4.406 to require ADC and Robotic to report forgeries within a specified time.  In addition, Article 4 makes no mention of meeting the statutory requirements by merely hiring a certified public accountant who uses QuickBooks. Finally, the  comment discusses altering the name of the payee *on the check* not merely altering the name of the payee in QuickBooks.  Therefore, ADC's and Robotic's arguments are without merit.

Id.  If a bank charges a customer's account for an item that is not properly payable, then the bank is liable to the customer for making an unauthorized payment.  Martin, 29 S.W.3d at 91.  A check with an unauthorized signature is not properly payable.  Id.

Article 4, however, provides banks some protection.  If the "bank sends or makes available a statement of account or items[,] . . . the customer must exercise reasonable promptness in examining the statement or the items to determine whether any payment was not authorized . . . ."  Tex. Bus. & Com. Code Ann. § 4.406(c).  A customer is required to "promptly notify the bank of the relevant facts" if "the customer should reasonably have discovered the unauthorized payment . . ." by reviewing the account statement or items provided.  Id.  "As a result, if the bank provides sufficient information, the customer bears the loss when he fails to detect and notify the bank about unauthorized transactions."  Martin, 29 S.W.3d at 92, 94 (stating that the "duty to detect and report is triggered when the bank meets its burden to provide the customer with enough information that the customer can detect that the unauthorized transaction has occurred").

JPMorgan argues that it provided ADC and Robotic with monthly account statements which included the paid checks, and that was sufficient information from which ADC and Robotic could discover and report the unauthorized items.  In response, ADC and Robotic argue that JPMorgan has not presented evidence that it provided sufficient information; the court turns to JPMorgan's evidence.

8

In her affidavit, Lisa Silverman, a JPMorgan field operations services coach who is the custodian of records for the ADC Account and Robotic Account, averred that monthly account statements were mailed within six business days of the date on the statement.[21] Specifically, she stated that the ADC and Robotic account statements were mailed to the address provided by the companies and that the account statements were made available online and at the bank.[22] She further averred that both Robotic's and ADC's monthly account statements contained the paid checks drawn during the proceeding month, that images of the paid checks were available electronically, and that the payee of the check was discernable on every check in the monthly account statements and online.[23]  In addition, JPMorgan attached images of the unauthorized checks that clearly show the payee to be Brandi Van Horn, the alleged forger.[24]

Based on the above, and ADC's and Robotic's failure to present any evidence in response showing how the statements failed to provide notice, ADC and Robotic have failed to raise a fact issue that JPMorgan did not provide sufficient information to detect the unauthorized items.

---

[21]    JPMorgan's Reply to Plaintiff's Response to JPMorgan's Motion for Summary Judgment, Docket Entry No. 31, Ex. A, Silverman's Affidavit, p. 2, ¶¶ 2-4.

[22]    Id. at ¶ 4.

[23]    Id.

[24]    JPMorgan's Motion for Summary Judgment, Docket Entry No. 21, Ex. A-4, Ex. A-5.

Therefore, the court determines as a matter of undisputed fact that JPMorgan provided ADC and Robotic with enough information to detect that an unauthorized transaction occurred.

**B.   Article 4 Modification**

According to Section 4.103, customers and banks may vary Article 4's provisions by contract; however, the agreement must not "disclaim a bank's responsibility for its own lack of good faith or failure to exercise ordinary care . . . ." <u>Martin</u>, 29 S.W.3d at 95, 97 (quoting Tex. Bus. & Com. Code Ann. § 4.103(a))(internal quotations omitted)(noting that deposit agreements are enforceable as a contract and may shorten the statutory time limits on the notice required to be given by a customer); <u>see also</u> <u>Canfield v. Bank One, Texas, N.A.</u>, 51 S.W.3d 828, 836 (Tex. App.—Texarkana 2001)(determining that "[t]he ninety-day notice period contained in the deposit agreement between Canfield and Bank One is not an unreasonably short period of time").

JPMorgan argues that the Account Agreement modified Article 4 to require ADC and Robotic to report unauthorized items within thirty days.  In response, ADC and Robotic argue that the Account Agreement is manifestly unreasonable, is an adhesion contract, and constitutes an improper waiver.

JPMorgan, ADC, and Robotic were permitted to vary the terms of Article 4 by agreement.  Tex. Bus. & Com. Code Ann § 4.406.  When the ADC Account and the Robotic Account were opened, Blom signed signature cards stating that he "acknowledg[ed] receipt of

10

[JPMorgans's] deposit agreement, which [included] all provisions that apply to this deposit account, and other agreements and service terms."[25]  By signing the signature cards, ADC and Robotic entered into a binding contract with JPMorgan.  <u>Martin</u>, 29 S.W.3d at 96 (stating that "[s]uch signature cards establish a contract between [the] banking institution and customer, regardless of whether the customer reads all the provisions to which he is agreeing").  Pursuant to the Account Agreement, Robotic and ADC were required to notify JPMorgan of any unauthorized items "within 30 days of the date on which the unauthorized item, or the Account statement that contained a description of the unauthorized item or error, was mailed, transmitted or otherwise made available to you . . . . ."  See <u>Martin</u>, 29 S.W.3d at 96, 99 (determining that deposit agreements are enforceable as contracts and that "the one-year notice period of section 4.406(d) can be modified by agreement . . . .").[26]

Therefore, ADC, Robotic, and JPMorgan modified the standard terms of Article 4 and agreed that ADC and Robotic were required to notify JPMorgan of any unauthorized item within thirty days of the

---

[25]      JPMorgan's Motion for Summary Judgment, Docket Entry No. 21, Ex. A-1, ADC Account Signature Card; Ex. A-2, Robotic Account Signature Card.

[26]      ADC and Robotic argue that <u>Martin</u> and <u>Canfield</u> are distinguishable from the instant case because in those cases there was no evidence presented that the party performed monthly reconciliation. <u>Canfield</u>, 51 S.W.3d at 828; <u>Martin</u>, 29 S.W.3d at 86.  However, the key is not whether the statements were actually reconciled, but rather, were the statements made available by the respective banks.  Therefore, ADC's and Robotic's attempts to distinguish <u>Martin</u> and <u>Canfield</u> fail.

11

date the monthly statements were made available.  See Martin, 29
S.W.3d at 97 (determining that a sixty-day notice provision was
enforceable and noting "that other jurisdictions have enforced
shortened notice periods ranging from fourteen to sixty days").

     The court turns to ADC's and Robotic's other arguments.
Without citing the court to any legal authority to support its
proposition, ADC and Robotic argue that the account agreements are
adhesion contracts and are manifestly unreasonable because the
agreements limit the bank's duty to verify account holder's
signature.

     ADC's and Robotic's arguments are without merit.  Not only
have Robotic and ADC failed cite the court to any legal authority
to support their argument that the account agreements are
unenforceable because they are adhesion contracts, Texas law
explicitly states that adhesion contracts are not automatically
unconscionable and, therefore, unenforceable.  In re AdvancePCS
Health, L.P., 172 S.W.3d 603, 608 (Tex. 2005).

     ADC and Robotic also have not cited to and the court has not
located any authority to support their argument that a thirty-day
reporting limit is manifestly unreasonable.  In fact, the Texas
Supreme Court determined in Martin that a sixty-day limitation was
enforceable and noted that enforcing shorter reporting requirements
than the statutory requirements was "consistent with decisions from
other jurisdictions . . ." and that "at least two Texas appellate
courts have . . . enforced shortened notice periods."  Martin, 29

                                 12

S.W.3d at 96 (citing <u>Basse Truck Line, Inc. v. First State Bank</u>, 949 S.W.2d 17, 21-22 (Tex. App.—San Antonio 1997, writ denied); <u>Tumlinson v. First Victoria Nat'l Bank</u>, 865 S.W.2d 176, 177 (Tex. App.—Corpus Christi 1993, no writ)); <u>See also</u> <u>Canfield</u>, 51 S.W.3d at 836 (noting that a shortened limitations period is valid if "it is reasonable and in conformance with the requisites of contract law"). Therefore, ADC's and Robotic's arguments are without merit.

The court turns to ADC's and Robotic's waiver argument. "Waiver is an intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right." <u>Barrand, Inc. V. Whataburger, Inc.</u>, 214 S.W.3d 122, 144 (Tex. App.—Corpus Christi 2006, pet. dism'd). "The elements of waiver are: (1) an existing right, benefit, or advantage; (2) knowledge, actual or constructive, of its existence; and (3) actual intent to relinquish the right, which can be inferred from conduct." <u>First Interstate Bank of Ariz., N.A. v. Interfund Corp.</u>, 924 F.2d 588, 595 (5th Cir. 1991).

Without discussing in any detail beyond merely pointing the court to several Texas cases, ADC and Robotic argue that the thirty-day notice provision constitutes an improper waiver of their rights because they did not knowingly, voluntarily, and intentionally agree to a shortened notice provision.

Here, ADC and Robotic neither cite to any case that has held that a similar provision constituted an improper waiver, nor explain how they did not enter into the account agreements

knowingly, voluntarily, and intentionally.  Finally, several courts have upheld notice provisions similar to the provision in this case.  See Martin, 29 S.W.3d at 99; Basse Truck Line, Inc., 949 S.W.2d at 21-22; Tumlinson, 865 S.W.2d at 178.

Therefore, ADC's and Robotic's waiver argument must fail.

## C.   Reporting Date

Under Texas law, "[s]ubstantial compliance excuses deviations from a contract's provisions that do not severely impair the contractual provision's purpose and is the legal equivalent of compliance unless otherwise provided."   Interstate Contracting Corp. V. City of Dallas, Tex., 407 F.3d 708, 727 (5th Cir. 2005); see also Chappell Hill Bank v. Lane Bank Eqip. Co., 38 S.W.3d 237, 242 (Tex. App.—Texarkana 2001, no pet.)(stating that "[s]ubstantial compliance with the requirements of a contract is the legal equivalent of full compliance").  In other contexts, Texas courts have held that strict compliance with written notice requirements is not required if the party has actual notice.  See Adcock v. First City Bank of Alice, 802 S.W.2d 305, 307 n. 3 (Tex. App.—San Antonio 1990, no writ)(determining that actual knowledge may satisfy the written notice requirement).

JPMorgan argues that ADC first reported the forgeries on January 19, 2007, and that Robotic first reported the forgeries on February 8, 2007, basing its argument on the first date on which a written forgery affidavit was submitted by either ADC or Robotic. In response, ADC and Robotic argue that they reported the forgeries

14

on December 28, 2006, and, because JPMorgan did not have the proper forms available, the oral notice substantially complied with the contractual requirements.   The court turns to the summary judgment evidence.

In support of its argument, JPMorgan cites the court to the Account Agreement, which requires written notice, and the forgery affidavits submitted for the ADC Account on January 19, 2007, and the Robotic Account on February 8, 2007.   In response, ADC and Robotic cite the court to Macias's affidavit where she testified about the significant difficulties she had in obtaining the required forgery affidavits.

On December 28, 2006, Macias first notified Pokorney, a banker at JPMorgan's Weslayan branch, "that some of the checks drawn on the accounts of ADC and [Robotic] may be forgeries."[27]   At that time, Macias requested the required JPMorgan forgery affidavits.[28] She contacted Pokorney a second time on January 4, 2007, to request the affidavits.[29]   During that conversation Macias confirmed the existence of multiple forgeries and again requested the required forgery affidavits.[30]   Macias testified that Pokorney told her that

---

[27]     Plaintiff's Response to JPMorgan's Motion for Summary Judgment, Docket Entry No. 26, p. 6, Ex. B, Macias's Affidavit p. 2, ¶ 8.

[28]     Id.

[29]     Id. at ¶ 9.

[30]     Id.

he would send her the required forgery affidavits later that day.[31]
Pokorney once again failed to send Macias the required forms, and
over the next several weeks, Macias repeatedly requested the
forgery affidavits.[32]    After going to another JPMorgan branch
location, Macias obtained the forgery affidavits and submitted the
ADC forgery affidavit on January 19, 2007, and the Robotic forgery
affidavit on February 8, 2007.[33]

Although the plain language of the Account Agreement requires
notice of unauthorized items to be in writing, ADC and Robotic have
presented sufficient evidence from which a reasonable jury could
conclude that they substantially complied with the terms of the
contract as early as December 28, 2006, when Macias first reported
the forgeries to Pokorney.  At that time, Macias notified JPMorgan
that there were possible forgeries on both the ADC and Robotic
accounts.    Pokorney informed Macias of the required forgery
affidavits, however, despite Macias's numerous requests, Pokorney
repeatedly failed to provide the required forgery affidavits to
Macias.

Based on the above, a reasonable jury could determine that ADC
and Robotic substantially complied with the terms of the Account
Agreement and provided proper notice as early as December 28, 2006.

---

[31]    Id. at pp. 2-3, ¶ 9.

[32]    Id. at p. 3, ¶¶ 9-10.

[33]    Id. at ¶¶ 11-12.

16

Because a reasonable jury could conclude that ADC and Robotic reported the unauthorized items as early as December 28, 2006, for purposes of this motion, the court will view the evidence in a light most favorable to Plaintiffs and consider December 28, 2006, to be the date ADC and Robotic reported the forgeries.[34]

**D.    Time-Barred Checks**

JPMorgan argues that several of the checks are time-barred because ADC and Robotic failed to timely notify JPMorgan of the forgeries.

The court turns to the evidence, keeping in mind that ADC and Robotic were required to report any unauthorized transactions "within 30 days of the date on which the unauthorized item, or the Account statement that contained a description of the unauthorized item or error was mailed, transmitted or otherwise made available."[35]

The court begins with the November statement, which covers the time period from November 1, 2006, to November 30, 2006, ("November Statement"). Because the parties have not presented any evidence to the contrary, the court assumes that the November Statement, was

---

[34]    Having determined that a reasonable jury could conclude that ADC and Robotic substantially complied with the terms of the contract as early as December 28, 2006, this court need not consider ADC's and Robotic's other arguments that a lack of written notice was an immaterial breach because JPMorgan did not provide the required forms and the argument that JPMorgan was not prejudiced by the delay between the oral and written notification of the forgeries.

[35]    JPMorgan's Motion for Summary Judgment, Docket Entry No. 21, Ex. A-3, Account Rules and Regulations.

17

dated the last day of November, November 30.[36]  Silverman averred
that monthly account statements are mailed to customers within six
business days of the date on the statement.[37]

Viewing the evidence in a light most favorable to Plaintiff,
the court presumes the November Statement was mailed six business
days from November 30, 2006, or December 8, 2006.[38]  Pursuant to the
account agreements, ADC and Robotic had thirty days from December
8, 2006, that is, January 7, 2007, to report the unauthorized
items.  As determined above, a reasonable jury could conclude that
ADC and Robotic first reported the unauthorized items as early as
December 28, 2006, well within the thirty-day reporting
requirement.  Because a reasonable jury could conclude that ADC and
Robotic first reported the unauthorized items on December 28, 2006,
within the required reporting time, summary judgment is improper
for all checks posted in the November Statement and subsequent
statements.

As to checks posted before the November Statement, the
earliest possible date that ADC and Robotic reported the forgeries
was December 28, 2006.  In order to meet the reporting deadline for
checks appearing in the October 2006 account statement, ADC and

---

[36]     If this is not correct, then the parties should file a motion for reconsideration with
supporting evidence.

[37]     JPMorgan's Reply to Plaintiff's Response to JPMorgan's Motion for Summary
Judgment, Docket Entry No. 31, Ex. A, Silverman's Affidavit, p. 2, ¶ 1.

[38]     <u>Id.</u>

Robotic were required to notify JPMorgan of any unauthorized payments by December 8, 2006. Therefore, ADC and Robotic failed to timely report the forged checks posted in the October 2006 statement and all the forged checks appearing in the prior statements.[39]

Therefore, genuine issues of material fact exist on all checks posted during the November Statement and subsequent statements; however, summary judgment is proper for JP Morgan on all forged checks posted in the October 2006 account statement and all forged checks posted in months before October 2006.

### IV.   Conclusion

Based on the foregoing, the court **GRANTS IN PART** and **DENIES IN PART** JPMorgan's Motion for Summary Judgment.

**SIGNED** in Houston, Texas, this 16th day of July, 2009.

Nancy K. Johnson
United States Magistrate Judge

---

[39]    Having determined that a reasonable jury could conclude that ADC and Robotic substantially complied with the terms of the Account Agreement when they orally reported the unauthorized items on December 28, 2006, this court need not address ADC's and Robotic's arguments that lack of written notice was an immaterial breach, that Section 4.406 does not require written notice, and that JPMorgan was not prejudiced by the delay and actually contributed to the delay.